FILED

2012 Sep-05  PM 03:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| LIBERTY NATIONAL LIFE INSURANCE COMPANY, | } } } | |
| Plaintiff, | } } | Civil Action No. 2:11-cv-00820-SLB |
| vs. | } } | |
| SUNTRUST BANK and DIANA BELLOMO, | } } } | |
| Defendants. | } | |

## MEMORANDUM OPINION

This case is currently before the court on defendant SunTrust Bank's ("SunTrust") Motion to Transfer. (Doc. 6.)[1]  In the Motion to Transfer, Suntrust "moves the Court to transfer this action to the United States District Court for the Southern District of Florida or, alternatively, to the Middle District of Florida" pursuant to 28 U.S.C. § 1404(a).  (*Id.* at 1.)  Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that Suntrust's Motion to Transfer is due to be granted.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

1

# I. <u>FACTUAL AND PROCEDURAL HISTORY</u>[2]

Defendant Diana Bellomo ("Bellomo") was employed by plaintiff Liberty National Life Insurance Company ("Liberty National") as a branch manager at Liberty National's Lake Worth, Florida office, where she was responsible for sending insurance applications from the Lake Worth, Florida office to Liberty National's headquarters in Birmingham, Alabama.  (Doc. 1 ¶¶ 6-7.)  Bellomo allegedly processed and submitted to Liberty National false and fraudulent insurance applications in the names of persons who never applied for insurance coverage with Liberty National.  (*Id.* ¶ 8.)  Bellomo allegedly represented to Liberty National that a Liberty National agent, William C. Schneider ("Schneider"), was due earned commission in conjunction with these false and fraudulent insurance applications. (*Id.* ¶ 9.)  As a result, Liberty National issued commission checks totaling $61,051.54 to Schneider drawn from Liberty National's Wachovia Bank account in Birmingham, Alabama.  (*Id.*)  The checks were mailed via U.S. Postal Service to Liberty National's Lake Worth, Florida office for distribution to the agent. (Doc. 6 at 72-73.)  Liberty National also issued commission checks in the amount of $20,752.69 directly to Bellomo, as Schneider's supervisor, drawn from Liberty National's Wachovia

---

[2] This statement of facts is taken from the Complaint, (doc. 1), the Declaration of John Barry in Support of Motion to Transfer, (doc. 6 at 24-27), and the relevant documents in Bellomo's criminal proceedings, *United States v. Bellomo*, 2:10-cr-00428-CLS-TMP.

Bank account in Birmingham, Alabama, which Bellomo also obtained in Liberty National's Lake Worth, Florida office.  (Doc. 1 ¶ 9.)

SunTrust, through an alleged failure to exercise ordinary care, allowed Bellomo to open a SunTrust bank account in Schneider's name.  (*Id.* ¶ 10; *see also* doc. 6 at 25.) Bellomo allegedly forged endorsements on the checks issued by Liberty National to Schneider and deposited them into the SunTrust bank account opened in Schneider's name.  (Doc. 1 ¶ 10.)  Bellomo also opened a SunTrust bank account in the name of herself and her husband, Christopher Bellomo ("Mr. Bellomo"), at the Palm Beach Lakes SunTrust branch located at 540 Village Boulevard, West Palm Beach, Florida, presumably for the purpose of depositing the checks issued by Liberty National directly to her.  (Doc. 6 at 25.)  Throughout the time the SunTrust accounts were open, Bellomo performed transactions in the accounts at SunTrust's Palm Beach Lakes branch, SunTrust's Downtown Lake Worth, Florida branch, and SunTrust's Lantana, Florida branch.  (*Id.* at 25-26.)

On or about December 1, 2010, an Information was filed in the Northern District of Alabama charging Bellomo with Wire Fraud and Mail Fraud arising out of the alleged scheme and artifice described above.  (Doc. 6 at 62-68.)  The indictment also included a notice of forfeiture in the amount of $83,814.23.  (*Id.* at 66-68.)  Bellomo entered into a plea agreement with the United States.  (Doc. 6 at 70-86.)  On August 31, 2011, Bellomo was sentenced to 15 months imprisonment and ordered to pay Liberty National

3

$83.814.23 in restitution. (*United States v. Bellomo*, 2:10-cr-00428-CLS-TMP, doc. 19 at 2, 6.)  On September 29, 2011, Bellomo voluntarily surrendered to the Coleman Federal Correction Complex in Coleman, Florida for service of her sentence. (*United States v. Bellomo*, 2:10-cr-00428-CLS-TMP, doc. 20.)

Liberty National filed its Complaint against Bellomo and SunTrust on February 28, 2011.  (Doc. 1.)  The Complaint asserts claims against Bellomo and SunTrust for a violation of Alabama's Uniform Commercial Code (the "Alabama UCC"), Ala. Code § 7-3-404, (*id*. ¶¶ 19-22), loss of an instrument by theft under Ala. Code § 6-5-284 and Alabama common law, (*id.* ¶¶ 24-27), and "aiding and abetting" fraud under Ala. Code §§ 6-5-370 & 6-5-101, (*id.* ¶¶ 28-36).  In response to the Complaint, SunTrust filed the instant Motion to Transfer, (doc. 6), along with an Answer to the Complaint.  (Doc. 9.) Liberty National filed a Response in Opposition to Defendant SunTrust Bank's Motion to Transfer.  (Doc. 11.)  SunTrust filed a Reply to Plaintiff's Opposition to Motion to Transfer.  (Doc. 13.)  Bellomo was served on August 4, 2011 and has yet to make an appearance in this case. (*See* doc. 15.)

## II. <u>DISCUSSION</u>

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  A district court has broad discretion in deciding whether to transfer an action to a more convenient forum under § 1404(a).

*England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) (citation omitted).  "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)).  "If the transfer would 'merely shift the inconvenience from one party to the other,' or if the balance of all factors is but slightly in favor of the movant," the court should defer to the plaintiff's choice of venue. *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 503 (M.D. Ala. 1994) (quoting *Grey v. Cont'l Mktg. Assoc., Inc.*, 315 F. Supp. 826, 831 (N.D. Ga. 1970)) (citations omitted).

Resolution of a motion to transfer pursuant to § 1404 requires a two-step process. First, the district court must determine whether the action could have been brought in the proposed transferee district court. *Johnston*, 158 F.R.D. at 503-04.  Second, the court must decide whether the balance of convenience favors transfer. *Id.* at 504.  "[T]he burden is on the movant to establish that the suggested forum is more convenient." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

As an initial matter, Liberty National contends that the "motion is premature until . . . Bellomo is served and afforded an opportunity to be heard."  (Doc. 11 at 1.)  Liberty National, however, has served Bellomo since the filing of the instant Motion to Transfer. (*See* doc. 15.)  But even assuming that Bellomo remained unserved, Liberty National has not offered *any* authority to support the proposition that a case cannot be transferred prior

to service on all defendants, and the court finds that "lack of service is no impediment to the current motion to transfer venue." *Hanover Ins. Co. v. Paint City Contractors, Inc.*, 299 F. Supp. 2d 554, 556 n.1 (E.D. Va. 2004). "Service of process on all named defendants is not a prerequisite to the court's power to transfer." *Id.* (citing *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 516 (4th Cir. 1955)); *see also Niemi v. NHK Spring Co., Ltd.*, No. 06-CV-108-32-DT, 2006 WL 1156555, *5-6 n.6 (E.D. Mich. Apr. 28, 2006) (rejecting argument that case cannot be transferred prior to service on all defendants and transferring case pursuant to 28 U.S.C. § 1406(a)).

As to the requirement that the proposed transferee district be one in which the claim could have originally been brought, "[t]he United States Supreme Court has interpreted this requirement to mean that (1) the suggested court must have proper subject matter jurisdiction, (2) the suggested court must be able to exercise personal jurisdiction over all defendants, and (3) venue must be proper in the suggested forum." *Hasty v. St. Jude Med. S.C. Inc.*, No. 7:06-cv-102(HL), 2007 WL 1428733, *3 (M.D. Ga. May 11, 2007) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). On the basis of these three factors, the court finds that this case could have originally been filed in the Southern District of Florida or the Middle District of Florida.

First, these courts have original subject matter jurisdiction over the action based upon diversity of citizenship. *See* 28 U.S.C. § 1332(a). Liberty National is "a corporation originally organized under the laws of the State of Alabama, with its principal

6

place of business, at all times relevant to this action, in Jefferson County, Alabama."[3]
(Doc. 1 ¶ 1.)  SunTrust is "a corporation organized under the laws of the State of Georgia,
with its principal place of business, at all times relevant to this action, in Atlanta,
Georgia."  (*Id.* ¶ 2.)   At the time this action was commenced and at all times relevant to
the allegations in the Complaint, Bellomo was a resident of Ocala, Florida. (*Id.* ¶ 3.)  As
of September 29, 2011, Bellomo resides in the Coleman Federal Correctional Complex in
Coleman, Florida. (*United States v. Bellomo*, 2:10-cr-00428-CLS-TMP, doc. 20.)  In
addition, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.
(*See* doc. 1 ¶¶ 5, 9, & 12.)  Accordingly, original subject matter jurisdiction, specifically
based upon diversity of citizenship, would be proper in the Southern or Middle District of
Florida.

Second, Bellomo and SunTrust are subject to personal jurisdiction in the State of
Florida.  *See Madara v. Hall*, 916 F.2d 1510, 1514-1515 (11th Cir. 1990) (discussing
personal jurisdiction under Florida law).  As to Bellomo, at all times relevant to the
allegations in the Complaint and at the time this action was commenced, Bellomo was a
resident of Ocala, Florida, which is in the Middle District of Florida.  (Doc. 1 ¶ 3.)
Bellomo was employed by Liberty National in Lake Worth, Florida, which is in the

---

[3] Although Liberty National has been re-domesticated under the laws of the State
of Nebraska and its parent company, Torchmark Corporation, has moved its principal
place of business to McKinney, Texas, the home office and administrative headquarters
of Liberty National remain in Jefferson County, Alabama.  (Doc. 11-1 ¶ 5.)

Southern District of Florida.  (*Id.* ¶ 6.)  Bellomo also allegedly committed tortious acts within the State of Florida.  (Doc. 6 at 62-86.); *see* Fla. Stat. Ann. § 48.193(1)(b) (West Supp. 1990) (providing a basis for asserting personal jurisdiction based on the commission of "a tortious act within this state").   As to SunTrust, according to the Declaration of John Barry in Support of the Motion to Transfer, SunTrust has significant contacts with the State of Florida by virtue of the fact that it conducts business in Florida through branches and offices located in all areas of the State, including but not limited to Orlando, Lake Worth, Ocala, Lantana, and West Palm Beach.  (Doc. 6 at 25-26.); *see* Fla. Stat. Ann. § 48.193(1)(a) (West Supp. 1990) (providing a basis for asserting personal jurisdiction based on "[o]perating, conducting, or engaging in, or carrying on a business or business venture in this state or having an office or agency in this state").  Accordingly, Bellomo and SunTrust are subject to personal jurisdiction in the State of Florida.

Third, venue is proper in the Southern or Middle District of Florida.  28 U.S.C. § 1391(b)(1) provides, in relevant part: "A civil action may be brought in -- (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]"  Section 1391(d) further provides, in relevant part:

> [I]n a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . .

28 U.S.C. § 1391(d).  As discussed *supra* SunTrust is a corporation that is subject to personal jurisdiction in Florida; by virtue of its contacts, it would be subject to personal jurisdiction in the Southern and Middle Districts of Florida if those districts were separate States; therefore, SunTrust is "deemed to reside" in Florida for the purposes of venue under 28 U.S.C. § 1391.  Since Bellomo also resides in the State of Florida, venue is determined by 28 U.S.C. § 1391(b)(1) and is proper in "a judicial district where any defendant resides" in the State of Florida, which in this case includes the Southern and Middle Districts of Florida.

Because the court has determined that this action could have originally been brought in the Southern or Middle Districts of Florida, the court must next consider whether the balance of convenience favors transfer.  In *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005), the Eleventh Circuit discussed the factors to be considered in determining convenience:

> Section 1404 factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at 1135 n.1 (citation omitted); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (analyzing the doctrine of *forum non conveniens* prior to the enactment of 28 U.S.C. § 1404).  The court will address each factor in turn.

9

**A. The Convenience of the Witnesses**

"The convenience of witnesses is said to be a primary, if not, the most important factor in passing on a motion to transfer under § 1404(a).  A court must focus primarily upon the availability and convenience of *key* witnesses."  *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003) (emphasis in original; internal citations omitted). SunTrust contends that "all of [its] likely trial witnesses are located outside of this District, most are located in either the Southern and Middle District of Florida, and the most relevant non-party witnesses are also located there as well."  (Doc. 6 at 10.) SunTrust has shown that the following people are potential witnesses: (1) Mr. Bellomo, who resides in Ocala, Florida (in the Middle District of Florida), (*id.*); (2) Schneider, a former Liberty National employee and the allegedly unwitting participant in Bellomo's scheme, who lives in Hobe Sound, Florida (in the Southern District of Florida), (*id.*); (3) Marrissa Taha, who resides in Wellington, Florida (in the Southern District of Florida) and works at SunTrust's Palm Beach Lakes Branch (in the Southern District of Florida), (*id.* at 10 and 26); (4) Donna Carroll, who resides in Jupiter, Florida (in the Southern District of Florida) and is the SunTrust area manager that supervises Marissa Taha, (*id.* at 26); (5) Rafael Corderes and Fabiola Rodrigues, work for SunTrust in Orlando, Florida (located in the Middle District of Florida) and investigated activity in the SunTrust Accounts and Liberty National's allegations of fraud, (*id.* at 10 & 26); (6) Charlene Richardson, who works in SunTrust's fraud investigation division in Atlanta, Georgia and

investigated activity in the SunTrust Accounts, (*id.* at 26); (7) Tracy S. Farley, who works for SunTrust in Ocala, Florida and was Bellomo's main point of contact for SunTrust Accounts, (*id.* at 11 and 26); and (8) Sobia Saquib, the former SunTrust employee that opened one of the SunTrust Accounts used by Bellomo and whose last known address is in Wellington, Florida, (*id.* at 26).

Liberty National contends that "all witnesses identified by . . . SunTrust . . . are parties, or current or former employees of one party or another." (Doc. 11 at 7.) Given that Liberty National alleges that one of its former employees committed fraud and theft by instrument using a bank account operated by SunTrust, it is not surprising that almost all of the witnesses identified by SunTrust are current or former employees of the parties. Although the convenience of party witnesses is less relevant than the convenience of non-party witnesses, it is relevant nonetheless. *See Nam v. U.S. Xpress, Inc.*, 1:10-CV-3924-AT, 2011 WL 1598835, *7 (N.D. Ga. Apr. 27, 2011) (noting that the convenience of party witnesses, though not critical, is relevant) (citations omitted).

Moreover, Liberty National's assertion that "all witnesses identified by . . . SunTrust . . . are parties, or current or former employees of one party or another[,]" (doc. 11 at 7), is incorrect. SunTrust identified Mr. Bellomo as a non-party witness. Mr. Bellomo resides in the Middle District of Florida and is not a current or former employee of SunTrust or Liberty National. SunTrust also identified Schneider as a non-party witness (though he is a former employee of Liberty National), Schneider also resides in

11

the Middle District of Florida.  (Doc. 6 at 10.)   *See Conseal Int'l Inc. v. Econalytic Sys., Inc.*, No. 09-60477-CIV, 2009 WL 1285865, at *2 (S.D. Fla. May 8, 2009) ("The convenience of non-party witnesses is an important, if not the most important, factor in determining whether a motion to transfer should be granted.") (quotations and citation omitted).  Liberty National has not shown, or even asserted, that a single witness resides outside the State of Florida.  (*See* doc. 11.)  As a result, and based on the location of the party and non-party witnesses identified by SunTrust (some of whom appear to be key to the determination of the liability of Bellomo and SunTrust), the court finds that the convenience of the witnesses weighs heavily in favor of a transfer.

**B. The Location of Documents and Access to Sources of Proof**

As discussed *infra*, the conduct giving rise to Liberty National's claims occurred in the Southern District of Florida.  *See AGSouth Genetics LLC v. Terrell Peanut Co.*, No. 3:09-CV-93 (CDL), 2009 WL 4893588, *3 (M.D. Ga. Dec. 9, 2009) ("[B]ecause the locus of operative facts is in the Albany Division, any documents and other sources of proof relevant to demonstrating Defendants' alleged acts of infringement likely will be found in the Albany Division.").  Although some of the relevant documents and sources of proof, including but not limited to documents related to Liberty National's bank account, may be located in Alabama, the majority of the records related to Bellomo's scheme are likely located in the Southern District of Florida, and more specifically, at Liberty National's Lake Worth, Florida office where Bellomo worked and at the Palm

Beach Lakes SunTrust branch where Bellomo negotiated the checks that form the basis of this action.  In addition, the records of SunTrust's and Liberty National's investigation of Bellomo's actions are likely located in the Southern District of Florida where such investigations were conducted.  Accordingly, this factor weighs in favor of a transfer.

## C. The Convenience of the Parties

As for the convenience of the parties, this factor weighs in favor of a transfer. Liberty National maintains its headquarters and administrative offices in Jefferson County, Alabama, which makes the Northern District of Alabama a convenient forum for the plaintiff.  However, Liberty National conducts business and has employees in the Southern and Middle Districts of Florida, which makes those venues convenient as well. SunTrust is headquartered in Atlanta, Georgia.  Like Liberty National, however, SunTrust has employees in the Southern and Middle Districts of Florida, which makes those venues convenient for SunTrust as well.

As noted above, as of September 29, 2011, Bellomo has been committed to the Coleman Federal Correctional Complex in Coleman, Florida. (*See United States v. Bellomo*, 2:10-cr-00428-CLS-TMP, doc. 20.)  This facility is located in the Middle District of Florida. *See U.S. v. Pruitt*, 417 Fed. Appx. 903, 904 n.2 (11th Cir. 2011) ("Pruitt is incarcerated at the United States Prison in Coleman, Florida, which is located in the Middle District of Florida.").  "In cases in which a plaintiff's claims may require testimony or files that can be most easily obtained at or ***near*** the plaintiff's place of

13

incarceration, [as here,] 'the district in which the institution is located will ordinarily be the more convenient forum.'" *Edwards v. Tasson*, No. Civ.A. 2:06CV13295, 2006 WL 2244039, *1 (E.D. Mich. Aug. 4, 2006) (citing *Joyner v. District of Columbia*, 267 F. Supp. 2d 15, 20-21 (D.C. Cir. 2003)) (emphasis added); *See also Salmon v. Aramark Food Serv., Inc.*, No. 09-3556, 2010 WL 1047892, *2 (E.D. Pa. Mar. 18, 2010) ("Because Salmon is incarcerated in Florida, it would not only be convenient for his complaint to proceed in Florida, it would be impracticable and costly for it to proceed in this district, over 1,000 miles from Salmon's current location at the Charlotte Correctional Institution."); *Lynch v. Obligacion*, No. 90 C 5124, 1991 WL 22535, *2 (N.D. Ill. Feb. 15, 1991) ("[D]efendant Obligacion is presently incarcerated in Southern Desert Correctional Center in Indian Springs, Nevada.  The difficulty in securing his temporary release and travel to Illinois for purposes of this action is likely to be significant."). Although Bellomo has not yet made an appearance in this case, the court is unwilling to assume that she has no interest in where the case is litigated.  Therefore, since Bellomo is currently incarcerated in a correctional complex located in the Middle District of Florida, this factor weighs in favor of a transfer.

## D. The Locus of Operative Facts

"In determining the appropriateness of transfer, a court may also consider where the operative facts underlying the cause of action transpired." *Johnston*, 158 F.R.D. at 504 (citing *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla.

1985)).  Liberty National maintains that the losses in this case "were sustained at Liberty

National Life Insurance Company's bank, Wachovia Bank National Association, here in

Birmingham, Alabama in the Northern District of Alabama."  (Doc. 11 at 3.)   Liberty

National contends that the conduct at issue in this case occurred in this district because:

> Mindful of the strictures of Rule 18 of the Federal Rules of Criminal
> Procedure, the United States Attorney for the Northern District of Alabama,
> the Honorable Joyce White Vance, and Assistant United States Attorney
> Patrick Carney have assured this Court that the scheme and artifice to
> defraud [Liberty National] of the money and funds that are the subject of
> this civil action occurred in the Northern District of Alabama.

(*Id.* at 2.)  SunTrust, on the other hand, contends that "all of the conduct 'complained of'

took place in the Southern District of Florida."  (Doc. 6 at 12 [emphasis omitted].)  The

court agrees with SunTrust.

     The court finds that the operative facts underlying Liberty National's claims in this

civil lawsuit transpired in Florida, and more specifically, in the Southern District of

Florida.  The Complaint alleges that: Bellomo worked for Liberty National in Lake

Worth, Florida, (doc. 1 ¶ 6); Bellomo sent false and fraudulent insurance applications to

Alabama from Lake Worth, Florida, (*id.* ¶¶ 7-8); Bellomo obtained fraudulent

commission checks in Lake Worth, Florida, (*id.* ¶ 9); Bellomo forged endorsements on

the commission checks in the Southern District of Florida, (*id.* ¶ 10); and fraudulently

opened bank accounts and deposited the forged and fraudulently obtained instruments at

SunTrust branches in Florida, (*id.* ¶¶ 11-12).  None of the conduct alleged in the

Complaint occurred in Alabama.  The ***only*** connection Alabama has to this case is that

Liberty National is headquartered in the Northern District of Alabama, the checks obtained by Bellomo were drawn from Liberty National's bank account in the Northern District of Alabama, and Liberty National's Chief Executive Officer, Anthony L. McWhorter, signed the checks in the Northern District of Alabama. (Doc. 11-1 at 2-4.) Aside from these three facts, Alabama is unrelated to the conduct that forms the basis of the allegations in this action. Therefore, this factor weighs heavily in favor of a transfer.

### E. The Availability of Process to Compel the Attendance of Unwilling Witnesses

SunTrust contends that "the fact that likely and potential non-party witnesses will not be subject to compulsory attendance at a trial of this case in this district weighs in favor of transfer." (Doc. 6 at 13.) Liberty National's opposition to the Motion to Transfer does not address compulsory attendance directly, but does assert that "both corporate parties can . . . take depositions of witnesses wherever they may be found, and submit them to this Honorable Court for its consideration of any evidence such witnesses may offer, by way of their depositions or otherwise." (Doc. 11 at 5.) The court agrees with SunTrust.

First, "when possible, live testimony is preferred over other means of presenting evidence . . . ." *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) (citation omitted). Thus, while it is certainly true that both corporate parties can depose witnesses wherever those witnesses may be found, that is not a fact that weighs against transfer. Second, neither William C. Schneider nor Christopher Bellomo,

the two non-party witnesses identified by SunTrust, could be compelled to testify in the

Northern District of Alabama. They would, however, be subject to compulsory attendance

in the Southern District of Florida and the Middle District of Florida. *See* Fed. R. Civ. P.

45(e) (allowing a court to hold in contempt any person who refuses to obey a subpoena

unless "the subpoena purports to require the nonparty to attend or produce at a place

outside the limits of Rule 45(c)(3)(A)(ii)"); Fed. R. Civ. P. 45(c)(3)(A)(ii) (requiring a

court to quash a subpoena that requires a nonparty to travel more than 100 miles from

where the nonparty resides, works, or regularly transacts business in person "except that,

subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by

traveling from any such place within the state where the trial is held"); and Fed. R. Civ. P.

45(c)(3)(B)(iii) (allowing a court to quash a subpoena if it requires "a person who is

neither a party nor a party's officer to incur substantial expense to travel more than 100

miles to attend trial").   Accordingly, this factor weighs heavily in favor of a transfer. *See*

*First Am. Title Ins. Co. v. Title2land, LLC*, No. 3:10cv869-CSC, 2011 WL 841325, *4

(M.D. Ala. Mar. 8, 2011) (finding that the unlikelihood that former employees of

defendant would travel from Louisiana to Alabama to testify weighed heavily in favor of

a transfer).

## F. The Relative Means of the Parties

As SunTrust correctly points out, "[b]oth SunTrust and Liberty National are large

corporations that do business in all three of the districts at issue here."  (Doc. 6 at 14.)  As

to those parties, this factor is evenly balanced.  In an attempt to overcome this even balance, SunTrust contends that "Bellomo is an individual and defending civil litigation in this district would likely be extremely burdensome on her."  (*Id.*)  SunTrust has not presented evidence relating to Bellomo's relative means to defend this action, and in the absence of such facts, this factor remains evenly balanced and weighs neither in favor of nor against a transfer.

## G. The Forum's Familiarity with the Governing Law

"[T]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case rather than having a court in some other forum untangle problems in conflicts of laws and in law foreign to itself." *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1091 (M.D. Ala. 1996) (quoting *Gulf Oil Corp.*, 330 U.S. at 509) (internal quotations ommitted).  SunTrust contends that "Florida law will govern this action, thus favoring transfer of this case to the Southern or Middle District of Florida."  (Doc. 6 at 15.)  Liberty National does not contend that Florida law does not apply, but instead relies on the Affidavit of Carol McCoy, a licensed attorney who is the Assistant Secretary of Liberty National, which states:

> I have reviewed the complaint filed in this action and note that, in addition to the UCC claims made in this diversity jurisdiction action, that it includes independent state law claims that, in my opinion, based on experience and common sense, cannot possibly be as familiar to any Federal District Judge in Florida as to any Federal District Judge in Alabama.

(Doc. 11-1 at 3-4.)  The court agrees with SunTrust.

"When it exercises jurisdiction based on diversity of citizenship . . . , a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action."  *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  The Complaint asserts claims against Bellomo and SunTrust for a violation of the Alabama UCC, Ala. Code § 7-3-404, (doc. 1 ¶¶ 19-22), loss of an instrument by theft under Ala. Code § 6-5-284 and Alabama common law, (*id.* ¶¶ 24-27), and "aiding and abetting" fraud under Ala. Code §§ 6-5-370 & 6-5-101, (*id.* ¶¶ 28-36). The Alabama UCC's choice of law provision, set forth in § 7-4-102(b), provides:

> (b) The liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place *where the bank is located*. In the case of action or non-action by or at a branch or separate office of a bank, its liability is governed by the law of the place *where the branch or separate office is located*.

Ala. Code § 7-4-102(b) (emphasis added).  As the Official Comment to § 7-4-102 states, this choice of law provision "is designed to state a workable rule for the solution of otherwise vexatious problems of the conflicts of laws . . . ."  *Id.*, Official Comment 2. The Official Comment further states that "[t]he routine and mechanical nature of bank collections makes it imperative that one law govern the activities of one office of a bank." *Id.*, Official Comment 2.a.

Section 7-4-102 and the Official Comments thereto make clear that Florida law applies to Liberty National's claim brought pursuant to the Alabama UCC.  Liberty National alleges in this case that SunTrust failed to exercise reasonable care and tortiously injured Liberty National in accepting checks from Bellomo for collection. SunTrust accepted these checks at SunTrust branch offices in Florida.  Therefore, Florida law governs Liberty National's UCC claim.  This, however, is not the end of the inquiry because Liberty National also asserts non-UCC claims brought under Alabama statutory and common law.

SunTrust contends that the Alabama UCC choice of law provision set forth above "applies not just to Liberty National's UCC claim, but to all of Liberty National's claims against SunTrust arising from Bellomo's activities."  (Doc. 6 at 16.)  SunTrust maintains that "[t]he Middle District of Alabama addressed this issue in *Cagle's, Inc. v. Valley Nat'l Bank*, 153 F. Supp. 2d 1288 (M.D. Ala. 2001)."  (*Id.*)

In *Cagle's*, an embezzlement victim, located in Georgia, sued the bank at which the embezzler deposited checks obtained through the embezzlement scheme.  153 F. Supp. 2d at 1290-91.  The plaintiff asserted UCC claims as well as common law claims of negligence and gross negligence.  *Id.* at 1289.  The embezzler perpetrated the embezzlement scheme by printing checks belonging to the plaintiff, payable to herself, and depositing those checks at the defendant bank's Valley, Alabama branch.  *Id.* at 1290-91.  The parties disputed whether Alabama or Georgia law applied to the common law

20

claims of negligence and gross negligence.  *Id.* at 1295.  The defendant argued that

Alabama law governed because the Alabama UCC choice of law provision set forth in

Ala. Code § 7-4-102 extended to the common law claims, which arose from the same set

of facts as the UCC claim.  *Id.* at 1296.  The plaintiff argued that Georgia law applied

because, under Alabama's *lex loci delicti* choice of law rule, the substantive rights of a

party are determined according to the place where the injury occurred.  *Id.* at 1295-96.

The court noted that, under Supreme Court precedent, it was required to look to

Alabama's choice of law provision set forth in Ala. Code § 7-4-102(b).  In doing so, the

court stated:

> A federal district court sitting in diversity is required to apply the choice of
> law rules of the state in which it sits. *See Klaxon Co. v. Stentor Electric
> Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Alabama
> UCC provides a choice of law provision in § 7-4-102(b), which provides
> that "liability of a bank for action or non-action with respect to an item
> handled by it . . . is governed by the law of the place where the bank is
> located." Ala. Code § 7-4-102(b). As the Official Comment to Alabama
> Code § 7-4-102(b) states, the choice of law provision in the UCC which
> governs banks "is designed to state a workable rule for the solution of
> otherwise vexatious problems of the conflicts of laws . . ." *Id*., Official
> Comment 2. The Comment goes on to state that the nature of bank
> collections makes it imperative that one law govern the activities of one
> office of a bank. *See id.* Comment 2(b). If a bank were to be subjected to
> the laws of a jurisdiction outside of the jurisdiction in which it was located,
> ***whether those laws were common law or statutory***, the business of bank
> collections would be impaired, and the purpose of the UCC would be
> thwarted.

*Id.* at 1296-97 (emphasis added).  On that basis, the court sided with the defendant and

held that § 7-4-102(b), and its corresponding Official Comments, applied "to theories

outside of the UCC, such as negligence claims." *Id.* at 1297 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Devon Bank*, 702 F. Supp. 652, 657 n.1 (N.D. Ill. 1988)).

The court agrees with the analysis in *Cagle*.  Despite the fact that "courts consistently conclude that the state where the injury occurred in a fraud claim is the state in which the plaintiff suffered the economic impact," *Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1348 (M.D. Ala. 1998) (citations omitted), which in this case would be Alabama, the court is persuaded by the language of § 7-4-102(b), the Official Comments thereto, and the analysis from *Cagle's* that Florida law applies to Liberty National's non-UCC claims for loss of an instrument by theft and fraud.[4]  The non-UCC claims are based on the same operative facts and arise out of the same series of transactions and occurrences as the UCC claim.  Under these circumstances, the court finds that subjecting SunTrust to Alabama law when the SunTrust branches at issue were located in Florida would thwart the purpose of the UCC and the choice of law provision therein. Because Florida law applies, and federal district courts in Florida are more familiar with the law of that forum than are federal district courts in Alabama, this factor weighs in favor of a transfer.

---

[4]Of course, this holding is not binding on the transferee court.

## H. The Weight Accorded the Plaintiff's Choice of Forum

"[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *In re Ricoh Corp.*, 870 F.2d at 573 (citing *Gulf Oil Corp.*, 330 U.S. at 508). However, "when 'the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.'" *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) (quoting *Garay v. BRK Elecs.*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)). In other words, "[w]here none of the conduct complained of took place in the forum selected by Plaintiff, the Plaintiff's choice of forum is of minimal value in determining whether to transfer an action." *Johnston*, 158 F.R.D. at 505 (citations omitted).

As discussed *supra*, the locus of operative facts underlying Liberty National's claims occurred in Florida, not Alabama. *See* Part II.D. Therefore, Liberty National's choice of forum - the Northern District of Alabama - is entitled to minimal deference. Consequently, this factor weighs in favor of a transfer.

## I. Trial Efficiency and the Interest of Justice

The 'interest of justice' factor of the § 1404(a) analysis captures "those public-interest factors of systemic integrity and fairness . . . ." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). This factor often overlaps with the other § 1404(a) factors and "include[s] such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case . . . ."

*Heller Fin.*, *Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citation omitted); *see also* WRIGHT, MILLER & COOPER, 15 FED. PRAC. & PROC. JURIS. § 3854 (3d ed.) ("[T]he administration of justice is served more efficiently when the action is litigated in the forum that more clearly encompasses the locus of operative facts and consequently may have a particular interest in the proper resolution of the dispute . . . .").

The court notes that the locus of operative facts occurred in Florida, that Florida law governs Liberty National's claims, that Liberty National does business in the Southern and Middle Districts of Florida, and that a transfer to the Southern or Middle Districts of Florida would not cause any undue delay.  For these reasons, the interests of justice will be served by a transfer to the Southern or Middle Districts of Florida.

In sum, all of the factors, with the exception of one (which is evenly balanced), weigh in favor of a transfer.  *See Johnston*, 158 F.R.D. at 505 ("Because Florida law controls and the cause of action springs exclusively from activity which occurred in Florida, and outside of this district, the interests of justice dictate that this action is due to be transferred to the Southern District of Florida.").  On that basis, the court finds that SunTrust has carried its burden to show that the Southern District of Florida is a more convenient forum and that Liberty National's choice of forum "is clearly outweighed by

other considerations." *Robinson*, 74 F.3d at 260 (citation omitted).  Accordingly, this case is due to be transferred to the Southern District of Florida.[5]

## CONCLUSION

For the foregoing reasons, SunTrust's Motion to Transfer, (doc. 6), is due to be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this 5th day of September, 2012.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The case will be transferred to the Southern District of Florida, not the Middle District of Florida, for three reasons: (1) SunTrust requested that the case be transferred to the Southern District of Florida (and only requested transfer to the Middle District of Florida in the alternative); (2) the majority of the operative facts giving rise to Liberty National's claims occurred in the Southern District of Florida; and (3) the majority of the witnesses reside or work in the Southern District of Florida.  A transfer to the Southern District of Florida will thus be the most convenient and best serve the interests of justice.